427 So.2d 1070 (1983)
B & L MOTORS, INC., D/B/a Bert Jackson Volkswagon, Appellant/Cross-Appellee,
v.
Cindy BIGNOTTI, Appellee/Cross-Appellant.
No. 82-673.
District Court of Appeal of Florida, Second District.
March 11, 1983.
*1071 George E. Tragos of Case, Kimpton, Tragos & Burke, P.A., Clearwater Beach, for appellant/cross-appellee.
Owen S. Allbritton of Allbritton & Barber, P.A., Clearwater, for appellee/cross-appellant.
LEHAN, Judge.
Defendant appeals a judgment awarding plaintiff attorney's fees and costs pursuant to section 501.2105, Florida Statutes (1979) (the "Little FTC Act").
A jury awarded plaintiff $6,500 in damages. The trial court entered a final judgment in that amount for plaintiff on December 11, 1980. On the same day, the trial court also entered a separate order denying defendant's motion for new trial and reserving action on plaintiff's request for attorney's fees and costs until exhaustion of all appeals in the case. The court did not in the final judgment reserve jurisdiction to award fees and costs. Defendant appealed the verdict, and this court affirmed on August 28, 1981. Thereafter, at plaintiff's request, defendant paid the judgment, and plaintiff provided a satisfaction of judgment which was recorded on October 1, 1981. The trial court, over the objection of defendant, entered judgment on March 11, 1982, for $7,272.79 in attorney's fees and costs. This appeal followed.
Defendant argues that the trial court did not have jurisdiction to enter the judgment awarding fees and costs because the prior judgment was satisfied and, in any event, did not reserve such jurisdiction, and the separate order was not sufficient for that purpose. Plaintiff contends that there was a satisfaction of only the prior judgment and that no reservation of jurisdiction in that judgment was necessary because section 501.2105 grants the trial court the power to award fees and costs after judgment and exhaustion of all appeals in the case.
We affirm the judgment awarding attorney's fees. Section 501.2105, in pertinent part, provides:
(1) In any civil litigation resulting from a consumer transaction involving a violation of this part .. . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, shall receive his reasonable attorney's fees and costs from the nonprevailing party.
(2) The attorney for the prevailing party shall submit a sworn affidavit of his time spent on the case and his costs incurred for all the motions, hearings, and appeals to the trial judge who presided over the civil case.
(3) The trial judge shall award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit.
(4) Any award of attorney's fees or costs shall become a part of the judgment and subject to execution as the law allows.
*1072 Appellant argues that a reservation of jurisdiction is invalid unless made in the final judgment itself, citing Church v. Church, 338 So.2d 544 (Fla. 3d DCA 1976), and Frumkes v. Frumkes, 328 So.2d 34 (Fla. 3d DCA 1976). While those dissolution of marriage cases and others cited by appellant do require that a court reserve jurisdiction to make later awards of attorney's fees, they do not hold that the reservation must be made in the final judgment as opposed to a separate, contemporaneous order.
Appellant also argues that subsection (4) of the statute prevents the subsequent judgment for attorney's fees because subsection (4) refers to "the" judgment and, therefore, the statute contemplates only one judgment. Appellant argues that, accordingly, the trial court would have no jurisdiction to enter a second judgment. We do not find that argument persuasive. It would require us to ignore subsection (1) which clearly contemplates a two-step procedure under which judgment is first entered on liability, and then, after any appeals, attorney's fees are awarded. Although subsection (1) does not literally refer to accomplishment of that second step as being in the form of a judgment, which was what the trial court here called the attorney's fee award, we think that the label placed by the trial court on the award was not inconsistent with the statute. To the extent that subsections (1) and (4) may appear to be in conflict here, we would, under well-recognized rules of statutory construction, reconcile them by finding the intent of the legislature to be that the second judgment for, or award of, attorney's fees would be legally considered as merged with the first judgment for damages into the one judgment referred to in subsection (4). This construction follows from the statutory language in subsection (4) that any attorney's fee award "shall become" a part of the first judgment.
Appellant further argues that since the satisfaction of judgment was recorded prior to the order awarding attorney's fees, the court no longer had jurisdiction in the case to make the award, citing Dock & Marine Construction Corp. v. Parrino, 211 So.2d 57 (Fla. 3d DCA 1968). Dock does hold that "the payment and satisfaction of the judgment ... precluded the subsequent entry of an order or judgment for costs." Id. at 59. However, we do not believe that the result expressed in Dock prevents the award of attorney's fees in this case. Dock relied upon section 57.041, Florida Statutes, which said that "the party recovering judgment shall recover all his legal costs which shall be included in the judgment." Section 501.2105(4), on the other hand, says that the attorney's fee award "shall become a part of the judgment." The American Heritage Dictionary (1973) defines "be" as "to exist in actuality" and defines "become" as "to be the fate or subsequent condition of." There is no requirement in section 501.2105 that the attorney's fee award be a part of the damages judgment initially. In fact, as noted above, section 501.2105 specifically contemplates a two-step procedure, and there appears to be no reason why the satisfaction of the damages awarded under the initial judgment should destroy the right given by the legislature to obtain an award of attorney's fees under the second step.
There is another argument for appellant's position which is similar to the foregoing argument, based upon Dock, as to lack of jurisdiction in the trial court to award attorney's fees. This other argument is that, since at the time of the second judgment awarding attorney's fees the first judgment had been extinguished by the satisfaction, there was nothing for the award to become a part of. However, the basis for this argument, which appears to be central to the contentions of appellant, is that a satisfaction of judgment causes the judgment to be wholly extinguished or to disappear totally. We do not agree. Dock does not say that nor do we interpret the law applicable to satisfactions of judgment to do so. The recognized effect of a satisfaction of judgment is only that it constitutes evidence of payment of the debt established by the judgment. Under Florida Rule of Civil Procedure 1.110(d), payment is an affirmative *1073 defense. See also Whiteside v. Dinkins, 86 Fla. 261, 97 So. 517 (1923), holding that a satisfaction of a judgment is a defense to a suit on the judgment. Accordingly, the execution and recording of the satisfaction of the initial judgment in the instant case did not extinguish that judgment or cause it to disappear. In our view the judgment remained sufficiently viable for the merger of the attorney's fee award into it so as to constitute fulfillment of the statutory procedures.
Our foregoing statutory interpretation under the facts of this case seems not only consistent with the wording of section 501.2105 as described above, but follows and does not defeat the clear intent of the legislature to provide attorney's fees to the prevailing party in a suit under that statute.
Appellant also argues two additional points. One is that appellee is not entitled to payment of costs for the prior appeal because appellee failed to serve a motion for costs within 30 days of the issuance of the mandate in the prior appeal, pursuant to Florida Rule of Appellate Procedure 9.400(a). Appellant's other point is that only the appellate court could award attorney's fees for time spent on the prior appeal and that the trial court was without jurisdiction to do so. As to the first point, although subsections (2) and (3) of section 501.2105 give the trial court authority to award costs for an appeal, section 501.2105 is silent as to the time for serving a motion for those costs. Rule 9.400(a), specifically establishing the time period within which to serve a motion for costs in the trial court, is not inconsistent with section 501.2105 and therefore controls. However, appellee did not move for, or obtain an award of, costs for the prior appeal. As to the other point, the trial court has authority under subsections (2) and (3) of section 501.2105 to award attorney's fees for an appeal. We construe the statute to contemplate a motion therefor to be filed in the trial court, but the statute does not establish a time period for the service of such motion. Rule 9.400 does not govern the time for service of such motion. Rule 9.400(b) refers to attorney's fee motions which are filed in the appellate court. The procedure followed by the trial court complied with the statute.
Appellee cross-appeals the denial of attorney's fees for time spent in recovering fees and costs in the trial court and on this appeal. We reverse and remand.
Section 501.2105 appears literally to encompass the award of fees to the prevailing party for motions and hearings to obtain the attorney's fees specifically authorized in the statute. Subsection (1) provides that the prevailing party "shall receive" his fees and costs, and subsection (2) provides that the affidavit shall include the attorney's time spent and costs incurred "for all the motions, hearings and appeals." Under subsection (3) the trial judge shall award costs "incurred in the action" and fees for time spent "on the case."
Case law construing other statutes which provide for attorney's fees has held that fees for an attorney's work to recover fees are not recoverable when the client is not obligated to the attorney for that work. Service Ins. Co. v. Gulf Steel Corp., 412 So.2d 967 (Fla.2d DCA 1982); Cincinnati Ins. Co. v. Palmer, 297 So.2d 96 (Fla. 4th DCA 1974). The rationale is that statutorily authorized attorney's fees are for the benefit of the prevailing party, and an attorney may not recover such fees for work done for the attorney's sole benefit. Cf. Susman v. Schuyler, 328 So.2d 30, 32 (Fla. 3d DCA 1976) (characterizing these statutory types of fees as in the nature of "special damages to compensate for the wrong done"). Attorney's fees which are recoverable in antitrust actions may be generally considered to be for the benefit of the client by relieving the client of the obligation to pay them to his attorney. See Hills, Antitrust Advisor (2d Ed. 1978), section 11.38.
Service Ins. Co. involved a disallowance of fees awarded for attorneys' work after the final judgment had been satisfied. The fee arrangement was that the attorneys would accept as their fees the award of the court. Therefore this court said that the client had no interest in the fee award in the sense that the award would not be *1074 shared with the client. Accordingly, it was held that the award could not include an amount for work to recover the award. In the instant case there was, as in Service Ins. Co., a satisfaction of the damages judgment prior to the award of attorney's fees, but there is no showing from the record of the fee arrangement between the appellee's attorneys and appellee. It appears that that fee arrangement was not considered by the trial court with reference to this cross-appeal issue. It may be that appellee did owe appellee's attorneys for their services and that the attorneys did not look solely to appellants for their fees out of the statutory fee award. Accordingly, it may be that appellee had an interest in the fee award in that the award would serve to relieve appellee of appellee's fee obligation to the attorneys to the extent of the amount of the award.
Therefore we remand for a determination of whether appellee did have such an interest in the fee award and whether the appellee owed appellee's attorneys for their work to obtain the statutory attorney's fee award. If not, then no such award was proper, and the trial court was correct. On the other hand, if that fee award is found to be in the interests of the client and if the fee arrangement is found to have contemplated payment for that work, the trial court should order additional fees for that work. Any such additional fees would be for the benefit of the client. Such a result, if it occurs on remand, would be consistent with the legislative intent that the prevailing party not bear the expense of the statutory action. See Perkins v. Standard Oil Co. of Cal., 474 F.2d 549, 554 (9th Cir.1973), cert. denied, 412 U.S. 940, 93 St.Ct. 2778, 37 L.Ed.2d 400, amended on other grounds, 487 F.2d 672.
We add the following considerations. An award of attorney's fees is in derogation of the common law, and statutes allowing for the award of such fees should be strictly construed. Service Ins. Co. v. Gulf Steel Corp., supra at 968. Statutorily authorized fees for work of the type in issue on this cross-appeal should not be awarded except when there is proof that the client had become, at the inception of the suit, obligated for such fees. Of course, the fees should not exceed reasonable fees as defined in D.R. 2-106 of the Code of Professional Responsibility, regardless of any other fee arrangement with the client. Under the standards of the Code, any fees of the type in issue here would not seem reasonably to include in ordinary circumstances payment for more than relatively routine time to establish the amount of what the statute has already provided is recoverable.
Appellee also cross-appeals the trial court's refusal to tax as costs the fees for attorney expert witnesses who testified at the hearing on attorney's fees. We affirm on this issue.
We recognize that the Fourth District Court of Appeal, in a carefully reasoned opinion, recently approved the taxation of such fees as costs, just as would be done with any other expert witness pursuant to section 92.231, Florida Statutes (1981). Murphy v. Tallardy, 422 So.2d 1098 (Fla. 4th DCA 1982). Murphy certified the matter to the Florida Supreme Court as one of great public importance.
We cannot agree with the Murphy view that the attorneys who testify on the value of an attorney's services in a proceeding collateral to the trial should be paid expert witness fees taxable as costs under the foregoing statute. That has not been the traditional practice, nor, in our view, should it be. Under the traditional practice which was followed by the trial court here the parties are not affected because, as a matter of professional courtesy, attorneys testify for their fellow attorneys without charge. See Mills v. Aronovitz, 404 So.2d 138 (Fla. 3d DCA 1981); Plever v. Bray, 266 So.2d 54 (Fla. 3d DCA 1972); and Allstate Ins. Co. v. Chastain, 251 So.2d 354 (Fla. 3d DCA 1971). Cf. Lee Engineering & Construction Co. v. Fellows, 209 So.2d 454 (Fla. 1968); and Robert & Co. Associates v. Zabawczuk, 200 So.2d 802 (Fla. 1967) (holding that expert witness fees for lawyers testifying on the amount of a reasonable attorney's fee cannot be collected in workmen's compensation proceedings).
*1075 Admittedly, this may appear to financially penalize testifying attorneys. However, in our view there is no improper discrimination against them, vis-a-vis nonattorney expert witnesses, for a number of reasons. First, such testimony is a responsibility properly undertaken by the expert witness attorney as an officer of the court to assist the court, the only alternative being for the court to be permitted to use its sole discretion in fixing attorney's fees. Second, as outlined hereinbelow, attorneys when practicing their profession (which as officers of the court in these circumstances they do) are in a different category from other expert witnesses.
The practice of law is not a business, however many business-like office procedures may be used by attorneys and however relatively crowded or competitive the profession may become. As Chief Justice (then Justice) Terrell said in State v. Murrell, 74 So.2d 221 (Fla. 1954),
[W]e do not overlook the contention that the practice of law is a competitive business controlled by standards not materially different from those which control other competitive businesses. If that were true, then all we have said about the law being a great profession, that the primary function of the lawyer is that of officer of the court for the administration of justice, that his relation to client is highly fiduciary and that his relation to the court and his brethren at the bar must be characterized by such candor and rectitude of conduct as to preclude him from ... appropriating other methods common to commercial ventures ... would amount to nothing more than empty trade talk. However, this is not true ... . The law is not a business  it is a profession, a noble one, with standards in certain respects different from those applicable to business, which standards it is the duty of the bar to uphold.
Id. at page 226. (emphasis by the supreme court). Perhaps somewhat ironically, that quotation is from a paragraph which also referred to the impropriety of advertising by lawyers. Nonetheless, the holding of Murrell, that solicitation of professional employment by lawyers constitutes unethical conduct, remains the law today, although modified by In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982).
We wholeheartedly subscribe to the goal which Justice Ehrlich's concurring opinion expresses in The Florida Bar v. Schreiber, 420 So.2d 599 (Fla. 1982), that "the practice of law not become a commercial enterprise, and that professionalism may yet survive." Id. at 600.
The practice of law is a profession with the essential characteristics of the attorney applying a complex, relatively esoteric body of knowledge for the benefit of, and in an actual relationship of trust and confidence with, the client. The legal profession is entirely and properly unique as compared to any other profession or occupation by virtue of its court-promulgated Code of Professional Responsibility. The Code establishes rules and principles under which attorneys, licensed by the state, govern their own conduct subject to the control and supervision of the courts. "True professionalism" (the term used by Mr. Justice Powell in 1978[1] and by Mr. Justice Blackman in 1977[2]) is not dead, notwithstanding any contrary, current indications which may seem to exist.
Any measures which the courts and attorneys may properly take should be taken to preserve, enforce, and avoid erosion of professional standards reflected by the Florida Code of Professional Responsibility[3], which *1076 is for the benefit of the public, or at least to convey to the public the correct conception of the true, unique professionalism of the Bar. We believe that the preservation of the traditional practice of an attorney expert witness as an officer of the court not receiving fees under the circumstances here constitutes such a measure.
An argument could be made that a witness's oath administered to an attorney testifying as an expert on attorney's fees, as here, might be omitted with reason. Such an attorney's witness's oath on his admission to the Bar and his obligation to the court might well arguably suffice. Nonetheless, until that day when the public (as well as all members of the Bar  and, we might add, all law schools through required, effective ethics curricula) fully recognizes the foregoing precepts expressed by Chief Justice Terrell, such an unpaid attorney expert witness should take the witness's oath under the law, albeit only as a redundancy to his oath of admission for at least the vast majority of attorneys. This is in the interest of avoiding risk of public misperception of such lawyer witness's true role.
We certify to the Florida Supreme Court, and incorporate herein by reference, the question posed by the Fourth District in Murphy as a matter of great public importance.
The judgment of the trial court is affirmed as to the award of $7,272.79 for attorney's fees and costs and is affirmed as to the denial of taxation as costs of fees for attorneys testifying as expert witnesses. The cause is remanded for a determination of whether additional fees are to be awarded to appellee pursuant to this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR PROCEEDINGS CONSISTENT HEREWITH.
BOARDMAN, A.C.J., and GRIMES, J., concur.
NOTES
[1] Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444, 456 (1978).
[2] Bates v. State Bar of Arizona, 433 U.S. 350, 368, 97 S.Ct. 2691, 2701, 53 L.Ed.2d 810 (1977).
[3] Contrary to perhaps popular misconception, the Code of Professional Responsibility, as promulgated by the Florida Supreme Court, does not simply rubber stamp the Code recommended by the A.B.A. See, e.g., The Florida Bar Ethics Opinion 75-19 as to an attorney's duty to the court (and to the public) in some circumstances under the Florida Code, in contrast to the A.B.A. Code, transcending his confidentiality obligation to his client.